IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| In re: | ) | |
| MARTIN WALK, SHANA WALK, | ) | Civil No.  2:12-CV-00511 BSJ |
| RYAN HALL, JODI HALL, and JOSE | ) | |
| HUERTA, | ) | |
| | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER RE: PETITION FOR A** |
| Petitioners, | ) | **WRIT OF MANDAMUS** |
| | ) | **(28 U.S.C. § 1651)** |
| vs. | ) | |
| | ) | |
| Honorable U.S. Bankruptcy Judge | ) | |
| WILLIAM T. THURMAN, | ) | |
| | ) | |
| Respondent. | ) | |

<div style="border:1px solid black">

**FILED**
CLERK, U.S. DISTRICT COURT
August 10, 2012 (4:24pm)
DISTRICT OF UTAH

</div>

* * * * * * * * *

On May 29, 2012, the petitioners filed their "Petition for a Writ of Mandamus to Compel

Compliance of U.S. Bankruptcy Court Judge William T. Thurman with Mandate of *Carroll v.*

*Key Bank*, U.S. District Court Case No. 2:10-CV-1055-CW for Strip Off of Wholly Unsecured

Junior Mortgage Liens," (CM/ECF No. 1) ("Writ Pet.").  The next day, the petitioners filed a

"Motion to Transfer Case and Reassign Judge" in *Riley Carroll and Jennifer Carroll v. Key*

*Bank*, Case No. 2:10-cv-01055-CW (D. Utah),[1] seeking to have the above-captioned proceeding

transferred and reassigned to the district judge who presided over the *Carroll* case.  Two days

later, this court issued a notice of hearing for a status conference and order to show cause why the

motion for transfer should not be denied and why the case should not be dismissed, scheduling

---

[1](Motion to Transfer Case and Reassign Judge, filed May 30, 2012 (CM/ECF No. 15), in *Riley Carroll and Jennifer Carroll v. Key Bank*, Case No. 2:10-cv-01055-CW (D. Utah).)  In this case, petitioners simultaneously filed a notice of the filing of their motion to transfer in the *Carroll* case.  (Notice of Motion to Transfer Related Case and Reassign Judge, filed May 30, 2012 (CM/ECF No. 2).)

that hearing for June 18, 2012.[2]

On June 4, 2012, the petitioners filed their response to the order to show cause,[3] a copy of which was also filed in the *Carroll* case.[4]  On June 15, 2012, Judge Waddoups entered an order in the *Carroll* case denying the petitioners' motion to transfer this case.[5]

At the June 18, 2012 hearing, the court considered the arguments of counsel concerning the relief sought by the petitioners, and ruled that the Petition should be dismissed.[6]  In entering an order reflecting that ruling, the court has chosen to elaborate upon the reasons therefor as follows.

---

[2](Notice of Hearing, filed June 1, 2012 (CM/ECF No. 3)

[3](Response to Order to Show Cause, filed June 4, 2012 (CM/ECF No. 4) ("OSC Resp.").)

[4](Notice of Order to Show Cause Issued in Case No. 2:12-cv-00511 Respecting Motion to Transfer Related Case and Reassign Judge Filed in this Case and of Petitioners' Response, filed June 4, 2012 (CM/ECF No. 16), in *Riley Carroll and Jennifer Carroll v. Key Bank*, Case No. 2:10-cv-01055-CW (D. Utah).)  The petitioners named herein are not parties in the *Carroll* case, but the petitioners and the Carrolls are represented by the same counsel.

[5](Order, filed June 15, 2012 (CM/ECF No. 17).)  Judge Waddoups noted that "[a]lthough the parties, property, and underlying bankruptcy cases are unrelated," the movants "contend the case should be transferred because it addresses the same legal issue.  Given that this matter is closed and Appellants have no connection with *Walk*, it is difficult to see why they would move to have *Walk* transferred."  (*Id.*)  He concluded that "such a transfer is not appropriate in this matter."  (*Id.*)

[6](*See* Minute Entry, dated June 18, 2012 (CM/ECF No. 5).)

## RELIEF SOUGHT BY THE PETITION

Each of the petitioners is currently a debtor in a Chapter 13 bankruptcy proceeding

pending in this District before United States Bankruptcy Judge William Thurman,[7] and they

collectively seek a writ of mandamus requiring Judge Thurman to enter default judgments

against certain creditors who are junior lienholders on the petitioners' residential properties,

declaring that their liens are void because the diminished market value of the subject property (as

of the date of filing of their Chapter 13 proceedings) has left the underlying loan obligations

wholly unsecured.  Petitioners' counsel submits that where the diminished market value of a

debtor's residence leaves a junior lien with no collateral value vis-a-vis a senior lien, the

bankruptcy court may determine that the junior lienholder's claim is not an "allowed secured

claim"[8] and thus its lien is void under 11 U.S.C. § 506(d) (2006 ed.), and may be "stripped off"

the debtors' property prior to discharge.[9]  In the bankruptcy appeal in *Carroll v. Key Bank*,

counsel persuaded Judge Waddoups to reach the same conclusion: "The equity value of the

---

[7](*In re Walk*, Case No. 11-35774 (Bankr. D. Utah, filed December 11, 2011); *In re Huerta*, Case No. 11-35960 (Bankr. D. Utah, filed November 4, 2011); *In re Hall*, Case No. 12-21514 (Bankr. D. Utah, filed February 13, 2012).)

[8]Counsel points to 11 U.S.C. § 506(a), which reads in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

[9]In pertinent part, 11 U.S.C. § 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

-3-

Carrolls' property does not exceed the secured claims of the CitiMortgage and Citibank loans," and therefore, Key Bank's claim as a junior lienholder "is wholly unsecured under section 506(a). Because the claim is wholly unsecured, Key Bank's [lien] is void under section 506(d) and should be 'stripped off.'"[10]

Petitioners were not parties to the *Carroll* litigation, but now seek to obtain the same result in their own pending Chapter 13 proceedings by requiring Judge Thurman to enter default judgments that immediately "strip off" existing junior liens on the petitioners' residences. They complain that Judge Thurman will likely include language in their requested default judgments providing that "'the lien is extinguished only upon discharge, that the lender shall retain the lien if the case is dismissed or converted, and that the recording of the judgment along with a discharge has the effect of a full reconveyance of the lien.'"[11] Petitioners insist that this court should grant a writ of mandamus compelling Judge Thurman to enter the requested default judgments without including any "lien retention until discharge" language, consistent with the "mandate" of Judge Waddoups' ruling in the *Carroll v. Key Bank* case—ostensibly the most recent decision by this district court in a bankruptcy appeal on this issue.[12]

In so arguing, petitioners' counsel misapprehends the import of the term "mandate," the nature and function of the writ of mandamus in the judicial context, and the operation of the doctrine of *stare decisis* at the federal district court level.

---

[10](Memorandum Decision and Order, filed December 19, 2011 (CM/ECF No. 8), at 8.)

[11](Writ Pet. at 2.) *See* 11 U.S.C. §§ 349(b), 1325(a)(5)(B)(i)(II)(bb) (2006 ed.).

[12](*Id.* at 3.) Petitioners' counsel submits that "[i]t is axiomatic black letter horn book law that it is the *most recent decision* by an appellate court that is binding." (*Id.* at 8 (emphasis in original).)

**Law of the Case and the Mandate Rule**

As the court of appeals has explained,

> The law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983). The doctrine has particular relevance following a remand order issued by an appellate court. "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). The law of the case doctrine is intended to prevent "continued re-argument of issues already decided," *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986), and to preserve scarce court resources—to avoid "in short, Dickens's *Jarndyce v. Jarndyce* syndrome." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000).

> An "important corollary" to the law of the case doctrine, "known as the 'mandate rule,' provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1520-21 (10th Cir. 1997) (internal quotation omitted); *see also Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) ("Under the 'law of the case' doctrine, the district court may not deviate from the appellate court's mandate.").

*Huffman v. Saul Holdings Ltd. Partnership*, 262 F.3d 1128, 1132 (10th Cir. 2001). "Generally, 'once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case' and there must be compliance with the reviewing court's mandate." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1520 (10th Cir. 1997)). Thus, the law of the case doctrine "requires a trial court to follow an appellate court's previous ruling on an issue *in the same case*. . . . This is the so-called 'mandate rule.'" *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (emphasis added & footnote omitted) (citing *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991) (citing *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977));

*United States v. Tenzer*, 213 F.3d 34, 39-40 (2d Cir. 2000)).   The "mandate rule" generally proscribes relitigation in the trial court of matters that were decided by an earlier appellate decision in the same case.  *United States v. Matthews*, 643 F.3d 9, 13 (1st Cir. 2011).[13]

In this circuit, "[t]he mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003); *cf. Quintieri*, 306 F.3d at 1225 n.5 ("Technically, the 'mandate' of this Court consists of a 'certified copy of [our] judgment, a copy of the opinion, and any direction as to costs.'" (quoting *United States v. Reyes*, 49 F.3d 63, 66 (2d Cir. 1995)).

Bankruptcy courts are subject to the mandate rule.  *See Jamaica Shipping Co. v. Orient*

---

[13] *See also United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004) (the mandate rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case"); *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."); *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1510-11 (11th Cir.1987) (en banc) ("A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. . . . The mandate rule is simply an application of the law of the case doctrine to a specific set of facts." *Id.* at 1510-11 (quotation marks omitted)); *United States v. Kennedy*, 682 F.3d 244, 252-53 (3d Cir. 2012) ("'[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.'" (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)); *United States v. Rivera–Martinez*, 931 F.2d 148, 150 (1st Cir. 1991) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it *must* be followed by the trial court on remand.") (emphasis in original)); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court");  *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948) (under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court.").

*Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 97 (2d Cir. 2006)

(citing *Quintieri*, 306 F.3d at 1225).  That is to say, a bankruptcy court is bound to follow an

appellate court's prior ruling—including a district court's ruling on appeal—on a specific issue *in*

*the same case*.

In this context, the mandate rule would require Judge Mosier of the bankruptcy court to

follow Judge Waddoups' memorandum decision in *Carroll v. Key Bank*—the appellate court

mandate in that case—after remand of the *Carroll* case to the bankruptcy court.[14]  But the law of

the case doctrine and its corollary "mandate rule" do not extend the preclusive effect of the

memorandum decision in *Carroll v. Key Bank* beyond the boundaries of that particular case.

**The Writ of Mandamus**

A writ of mandamus can be used to "assure that a lower court complies with the spirit as

well as the letter of the mandate issued to that court by a higher court," *In re Cont'l Ill. Sec. Lit.*,

985 F.2d 867, 869 (7th Cir. 1993), but here, no appellate mandate has yet been issued to Judge

Thurman in connection with the petitioners' pending Chapter 13 proceedings.  As explained

above, Judge Waddoups' memorandum decision in *Carroll v. Key Bank* does not serve as an

appellate court "mandate" for purposes of any bankruptcy proceeding other than the *Carroll* case

itself.

The question before this court on the order to show cause is whether the petitioners are

entitled to obtain a writ of mandamus any other ground.

"It is well established and oft repeated that "mandamus is an extraordinary writ, and the

---

[14]Petitioners advise that Judge Mosier entered an order on January 24, 2012 conforming
to that mandate.  (Writ Pet. at 4 ¶ 3 & Exhibit "B".)

requirements for its issuance are strict.'" *Dalton v. United States (In re Dalton)*, 733 F.2d 710, 716 (10th Cir. 1984) (quoting *United States v. Winner*, 641 F.2d 825, 830-31 (10th Cir. 1981)). "The Supreme Court has made it clear that mandamus is a 'drastic' remedy that is 'to be invoked only in extraordinary situations.'" *In re Antrobus*, 519 F.3d 1123, 1124 (10th Cir. 2008) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam)).

In the federal courts, writs of mandamus are governed by two statutes:

The first, more general statute, is the All Writs Act, 28 U.S.C. § 1651. That Act states:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

In turn, Congress has separately conferred jurisdiction on the district courts to entertain suits "in the nature of" mandamus in 28 U.S.C. § 1361:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

*United States v. Choi*, 818 F. Supp. 2d 79, 84-85 (D.D.C. 2011). In *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007), the Tenth Circuit held that 28 U.S.C. § 1361 does not confer jurisdiction in the district court over a mandamus action directed toward the United States Supreme Court. As Judge Arguello of the District of Colorado explains,

> Although the *Trackwell* Court only specifically considered the statute's application to the Supreme Court, its language and reasoning is equally applicable to all federal courts and judges. *See, e.g., id.* at 1242 (holding that § 1361 "does not apply to courts"); 1245 (quoting *Hubbard v. United States*, 514 U.S. 695, 699, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) for the proposition that "[i]n ordinary parlance, federal courts are not described as 'departments' or 'agencies' of the Government"); 1246 (ruling that § 1361 "exclu[des] . . . the judiciary from its

compass"); 1246–47 (citing cases interpreting 28 U.S.C. § 1391(e), the venue
provision governing § 1361 suits, as inapplicable to suits against judges and court
officials). Thus, given *Trackwell*'s reasoning, the Court finds that § 1361 cannot
be invoked to confer jurisdiction in the district court over mandamus actions
directed at federal courts or judicial officers.

*Smith v. Krieger*, 643 F. Supp. 2d 1274, 1281 (D. Colo. 2009), *aff'd,* 389 Fed. Appx. 789

(10th Cir. 2010);[15] *Choi*, 818 F. Supp. 2d at 85 (observing that "§ 1361 is only a source of

jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive*

branch" (emphasis in original) (citing *Trackwell*)).

 Petitioners' counsel invokes both statutory sections as the jurisdictional footing for the

relief sought by the petition.[16]  Attempting to argue around the clear import of *Trackwell*'s

reasoning concerning the scope of § 1361, counsel asserts that a writ directed to a bankruptcy

judge "is clearly directed to an 'officer or employee of the United States'" within the plain

language of § 1361;[17] that in prior cases, the Tenth Circuit has acknowledged the authority of

---

[15]In affirming Judge Arguello's conclusion, the court of appeals observed:

Regarding the district court's denial of relief in the nature of mandamus, a panel
of this court has held that such relief does not lie against the federal courts under
28 U.S.C. § 1361, *Trackwell*, 472 F.3d at 1246, and another panel has held that
federal courts lack mandamus power to order state courts or their judicial officers
to perform their judicial duties, *Van Sickle*, 791 F.2d at 1436. There was no error
in the district court's application of these holdings.

389 Fed. Appx. at 795.

[16](OSC Resp. at 5 ("Petitioners herein seek relief under both 28 U.S.C. §1361 and
§1651.").)

[17](*Id.*)

district courts to issue writs of mandamus to bankruptcy courts;[18] and that *Pulliam v. Allen*, 466 US 522, 538 (1984), found that "significant historical common law application of writs of mandamus against judicial officers" continue to apply "under modern statutes."[19]

The legal authority cited by petitioners' counsel offers no direct support for the exercise of § 1361 jurisdiction over a court or a judicial officer contrary to the reasoning of *Trackwell*, and this court concludes that § 1361 does not apply in this case.  "To be sure, this court has jurisdiction under the All Writs Act to issue writs, including writs of mandamus, in aid of our jurisdiction. 28 U.S.C. § 1651. Thus we may issue a writ of mandamus to a lower court in appropriate circumstances."  *In re Sutton*, 652 F.3d 678, 679 (6th Cir. 2011) (citations omitted).[20]

The question is whether these circumstances are appropriate.

"Mandamus is not the same as, nor is it a substitute for, a direct appeal."  *In re Motor Fuel Temperature Sales Practices Lit.*, 641 F.3d 470, 487 (10th Cir. 2011) (citing *In re Cooper*

---

[18](*Id.* at 6 (citing *Armstrong v. Cornish*, 102 Fed. Appx. 118 (10th Cir. 2004)).)  In turn, *Armstrong v. Cornish* cites to *Allied Chem. Corp.* and *In re Dalton*, both of which refer to the All Writs Act, 28 U.S.C. § 1651—not § 1361.

[19](*Id.*)  *Pulliam v. Allen* likewise makes no specific reference to § 1361 as authorizing writs of mandamus directed at federal courts or judicial officers.

[20]Fed. R. Civ. P. 81(b) says "the writs of scire facias and mandamus are abolished."  But as the court of appeals has observed:

> To be sure, with the abolition of the traditional common law forms of action, the writ of mandamus is no longer technically available. But Federal Rule of Civil Procedure 81(b) provides, "Relief heretofore available by mandamus . . . may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules." The generic "civil action" of the new rules, *see* Fed. R. Civ. P. 2, provides the form of action in which mandamus relief is now available.

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir. 2005).

*Tire & Rubber Co.*, 568 F.3d 1180, 1186 (10th Cir. 2009). A writ of mandamus differs in many

important respects from a direct appeal. "Most significantly, the standard for granting the writ

differs from that for reversing on appeal. 'Although a simple showing of error may suffice to

obtain reversal on direct appeal, a greater showing must be made to obtain a writ of mandamus.'"

*Cooper Tire*, 568 F.3d at 1186 (quoting *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 655

(10th Cir. 1984)). "Mandamus will issue only in those exceptional cases where the inferior court

has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a judicial

usurpation of power. The party seeking the writ must show that the right to the writ is 'clear and

indisputable.'" *United States v. Pickard*, 676 F.3d 1214, 1218 (10th Cir. 2012) (quoting

*Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 153 (10th Cir. 1995) (quoting *Kaiser Steel

Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 387 (10th Cir. 1990) (internal quotation

marks omitted))); *see Allied Chem. Corp.*, 449 U.S. at 35 ("Only exceptional circumstances,

amounting to a judicial usurpation of power, will justify the invocation of this extraordinary

remedy.")[21]

> Unlike an appeal, a writ of mandamus is used "only to confine an inferior
> court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise
> its authority when it is its duty to do so." *Allied Chem. Corp.*, 449 U.S. at 35, 101
> S.Ct. 188 (internal quotation marks omitted). "Only exceptional circumstances,
> amounting to a judicial usurpation of power, will justify the invocation of this
> extraordinary remedy." *Id.* Therefore, we will grant a writ only when the district
> court has "acted wholly without jurisdiction or so clearly abused its discretion as
> to constitute usurpation of power." *United States v. Carrigan*, 804 F.2d 599, 602
> (10th Cir. 1986) (internal quotation marks omitted).

*Cooper Tire*, 568 F.3d at 1186. As the court of appeals instructs,

---

[21]*See also Allied Chem. Corp.*, 449 U.S. at 36 ("our cases have answered the question as
to the availability of mandamus in situations such as this with the refrain: 'What never? Well,
*hardly* ever!'" (emphasis in original))

-11-

Three conditions must be met before a writ of mandamus may issue. First, because a writ is not a substitute for an appeal, "'the party seeking issuance of the writ must have no other adequate means to attain the relief he desires.'" *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380, 124 S. Ct. 2576, 159 L. Ed.2d 459 (2004) (alterations omitted) (quoting *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). Second, the petitioner must demonstrate that his right to the writ is "'clear and indisputable.'" *Id.* at 381, 124 S.Ct. 2576 (quoting *Kerr*, 426 U.S. at 403, 96 S. Ct. 2119). Finally, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

*Id.* "For guidance in determining whether the writ may issue," the court of appeals has "identified five 'nonconclusive guidelines.'" *Id.* at 1187 (quoting *United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997) (per curiam)). These guidelines are:

 (1) whether the party has alternative means to secure relief; (2) whether the party will be damaged "in a way not correctable on appeal"; (3) whether "the district court's order constitutes an abuse of discretion"; (4) whether the order "represents an often repeated error and manifests a persistent disregard of federal rules"; and (5) whether the order raises "new and important problems or issues of law of the first impression."

*In re Qwest Commc'ns*, 450 F.3d 1179, 1184 (10th Cir. 2006) (quoting *Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 153 (10th Cir. 1995)).

Petitioners do not contend that the bankruptcy court is acting in the absence of any jurisdiction. *Compare In re C and M Properties, L.L.C.*, 563 F.3d 1156 (10th Cir. 2009) (mandamus granted vacating all bankruptcy and district court orders entered after case was remanded to state court in 2004). Rather, they assert that Judge Thurman may yet enter default judgments against junior lienholders in their Chapter 13 proceedings that do not comport precisely with Judge Waddoups' memorandum decision in *Carroll v. Key Bank*, and that doing so would amount to an abuse of discretion warranting mandamus relief.

To satisfy the requisites of mandamus and the Tenth Circuit's guidelines, petitioners

-12-

assert first that they have no "alternative means to secure relief," *e.g.*, direct appeal, because "[t]here are no orders to appeal. No appeal lies from an unsigned order."[22]   "Since no appeal lies from any non-existent order, it could hardly be corrected on appeal," and petitioners argue that "[t]he damage of not having the relief to which all petitioners are entitled under the direct appellate mandate of *Carroll v. Key Bank* . . . cannot be corrected unless either an order is entered which could be appealed or the bankruptcy judge is directed to obey the mandate of this Court."[23]

The bankruptcy court's anticipated entry of the petitioners' requested default judgments would plainly allow for a direct appeal, but petitioners argue that "if an appeal were necessary every time the same issue already decided by *Carroll* occurs, the bankruptcy appellate process would be seriously undermined under every principle of *stare decisis*."[24]

---

[22](OSC Resp. at 9.)

[23](*Id.*)  Petitioners do not seek to challenge a non-appealable order staying proceedings, *cf. In re Kozeny*, 236 F.3d 615, 620 (10th Cir. 2000) (ruling that "[b]ecause this stay order is neither a final, appealable order . . . nor an appealable collateral order . . ., we hold that the review of the district court's stay order is properly before us on mandamus"); and this is not a situation where direct appeal is unavailable because petitioners are nonparties.  *Cf. Clyma v. Sunoco, Inc.*, 594 F.3d 777, 782 (10th Cir. 2010) (holding that a bench ruling adverse to non-parties' application to interview jurors is reviewable by way of mandamus).  Nor is this a case in which the respondent judge "has adopted a jury instruction in advance of trial that 'clearly violate[s] the law, risk[s] prejudicing the Government at trial with jeopardy attached, and provide[s] the Government no other avenue of appeal.'"  *In re United States*, 578 F.3d 1195, 1199 (10th Cir. 2009) (quoting *In re United States*, 397 F.3d 274, 283 (5th Cir.2005)).

[24](*Id.*)

**Federal District Courts and *Stare Decisis***

"*Stare decisis*, briefly stated, makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decisions." 1B James Wm. Moore, *Moore's Federal Practice* ¶ 0.402[1], at p. I-2 (2d ed. rev. 1996) (footnote omitted).  In the federal court system, "the court of appeals in one circuit owes no obedience to decisions of a court of appeals in another circuit, though of course it may find the reasons given for such a decision persuasive, or may be influenced by the accumulation of authority," and "the district courts, like the courts of appeals, owe no obedience to the decisions of their counterparts in other districts, nor to the decisions of the courts of appeals in other circuits." *Id.* (footnotes omitted).

While principles of *stare decisis* bind panels of the court of appeals to follow the "law of the circuit" embodied in prior opinions of that court,

> "it is clear that there is no such thing as 'the law of the district.'" *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). "[D]istrict court decisions cannot be treated as authoritative on issues of law. The reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be a controlling precedent." *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003) (quotation omitted).

*Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1329 (10th Cir. 2008).  "Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration'" by another district judge "'of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.'" *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d at 1371 (footnote omitted) (quoting *State Farm Mut.*

-14-

*Auto. Ins. Co. v. Bates*, 542 F.Supp. 807, 816 (N.D. Ga. 1982)).  "Where a second judge believes

that a different result may obtain, independent analysis is appropriate."  *Id.*[25]  As the Eleventh

Circuit explained in *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d

956 (11th Cir. 2001),

> Unlike circuit court panels where one panel will not overrule another, . . . district
> courts are not held to the same standard. . . .  While the decisions of their fellow
> judges are persuasive, they are not binding authority. . . .  As a result, the district
> court cannot be said to be bound by a decision of one of its brother or sister
> judges.

*Id.* at 965 (citations omitted). The Supreme Court acknowledged this distinction in *Gasperini v.*

*Center for Humanities, Inc.*, 518 U.S. 415 (1996): "If there is a federal district court standard, it

must come from the Court of Appeals, not from the over 40 district court judges in the Southern

District of New York, each of whom sits alone and renders decisions not binding on the others,"

*id.* at 430 n.10, and more recently in *Camreta v. Greene*, 131 S.Ct. 2020 (2011): "'A decision of

---

[25]*See also Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) ("A district court decision
binds no judge in any other case, save to the extent that doctrines of preclusion (not *stare decisis*)
apply."); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569,
(7th Cir. 1987) ("A single district court decision . . . has little precedential effect. It is not
binding on the circuit, or even on other district judges in the same district."); *Colby v. J.C.*
*Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (district judges should not treat decisions
of other district judges as controlling unless doctrines of res judicata or collateral estoppel apply);
*Starbuck v. City and Cnty of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The
doctrine of stare decisis does not compel one district court judge to follow the decision of
another."); *Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) (observing that the first
district judge to decide an issue within a district or within a circuit does not bind all similarly
situated district judges);  *Farley v. Farley*, 481 F.2d 1009 (3d Cir. 1973) (noting that even a
three-judge decision of the district court is not necessarily binding on any other district court);
*Pears v. Mobile Cnty*, 645 F. Supp. 2d 1062, 1076 n.18 (S.D. Ala. 2009) ("It is black-letter law
that the decision of one federal district court is not binding on another federal district court, or
even on the same judge in another case." (citations omitted)); *EEOC v. Pan American World*
*Airways*, 576 F.Supp. 1530, 1535 (S.D.N.Y.1984) (district court decision was not binding even
on other district courts in the same district).

a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Id.* at 2033 n.7 (quoting 18 James Wm. Moore, *Moore's Fed. Practice* § 134.02[1][d], at p. 134-26 (3d ed. rev. 2011) (footnote omitted)).

The same appears to be no less true of district court decisions rendered in the context of bankruptcy appeals.  *See In re Buckner*, 218 B.R. 137, 146 n.12 (10th Cir. BAP 1998); *In re Kuhn*, 408 B.R. 528, 535 (Bankr. D. Kan. 2009) ("A bankruptcy court is not bound by decisions of the federal district court entered in appeals of bankruptcy cases, even though sitting in the same district."); *In re Jones*, 298 B.R. 451, 460-61 (Bankr. D. Kan. 2003) ("Because the district judges in the District of Kansas are not bound by *stare decisis* to follow one another's decisions, the bankruptcy courts are not bound by that doctrine to follow any district judge's decisions either."); *see also* Annotation, *Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions*, 8 A.L.R. Fed. 2d 155 (2006) (discussing the conflicting case law).

As the Second Circuit observed in *Weber v. United States*, 484 F.3d 154 (2d Cir. 2007), Congress amended 28 U.S.C. § 158(d) in 2005 to provide that the courts of appeals

> "shall have jurisdiction of appeals" from a bankruptcy court if the bankruptcy court certifies that either "(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision . . . or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(i)-(iii). This court may in its discretion exercise, or decline to exercise, that jurisdiction. 28 U.S.C. § 158(d)(2)(A) ("and if the court of appeals *authorizes* the direct appeal of the judgment, order, or decree") (emphasis added).
> * * * *

-16-

Among the reasons for the direct appeal amendment was widespread unhappiness at the paucity of settled bankruptcy-law precedent.  The House Report that accompanied the BAPCPA emphasized that "decisions rendered by a district court as well as a bankruptcy appellate panel are generally not binding and lack stare decisis value." See H.R.Rep. No. 109-31, at 148 (2005), U.S.Code Cong & Admins.News 2005, 88, 206; see also H.R. Rep. No. 107-3, Prt. 1, at 112 (2001) (same).

*Id.* at 157, 158 (footnote omitted); *see also* Judith A. McKenna & Elizabeth C. Wiggins,

*Alternative Structures for Bankruptcy Appeals*, 76 Am. Bankr. L.J. 625, 627 (2002) ("The

bankruptcy appellate system is not well structured to produce binding precedent.").  Providing for

a direct bankruptcy appeal to the court of appeals involving "a question of law requiring

resolution of conflicting decisions" makes obvious sense:

The archetype for application of the doctrine of stare decisis is having all appeals from a particular trial court reviewed by a single superior court, the decisions of which are then binding on the inferior court.  Because half of the federal circuits have bankruptcy appellate panels as well as district courts hearing appeals, and because district court rulings are not considered binding on courts in other districts or even on other district judges in the same district, the basic framework for application of stare decisis does not exist in bankruptcy appeals, creating much uncertainty as to the precedential value of bankruptcy appeal decisions.

Annotation, *Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District*

*Court Bankruptcy Case Decisions*, 8 A.L.R. Fed. 2d at 168-69 (footnotes omitted).[26]  The

currently prevailing view is aptly summarized in *In re Barakat*, 173 B.R. 672  (Bankr. C.D. Cal.

---

[26] *Cf. In re Shattuc Cable Corp.*, 138 B.R. 557, 565-67 (Bankr. N. D. Ill. 1992) (reasoning that under *stare decisis* principles, bankruptcy courts are "not bound to follow the decision of a single district court judge in a multi-judge district"); *In re Bucchino*, 439 B.R. 761, 769 n.14 (Bankr. D.N.M. 2010) (same); *In re Romano*, 350 B.R. 276, 281 (Bankr. E.D. La. 2005) (same); *In re Silverman*, 616 F.3d 1001, 1005 n.2 (9th Cir. 2010) (recognizing that "because district judges within a district do not bind each other," requiring bankruptcy courts to be "bound by all the decisions of all the district judges within the district where the bankruptcy court sits" could subject "bankruptcy courts to a non-uniform body of law.")

1994), *aff'd*, 99 F.3d 1520 (9th Cir.1996):

> When an appeal is taken to the district court, the judge who determines the appeal is not bound by the appellate decisions of his or her colleagues. . . .
>
> Therefore in a district with more than one district judge, the appellate ruling by a district judge is only binding on the case in which it is made and not on the district as a whole unless the district judges themselves sit en banc and therefore bind themselves to the law enunciated in that opinion.  In other words, unless the judges of the district court are willing to accept the concept that they are bound by prior decisions of their colleagues on issues before them, appellate holdings of the judges of the district court are not to be given stare decisis affect, for it is the willingness of the appellate court to create certainty in the law that requires trial courts in their "chain of command" to follow their authority.  Since most appellate decisions of the district court are not decisions of the district court en banc, but are decisions of a given district judge and are not binding on other district judges of that district, they should not be seen as binding on the bankruptcy judges of that district.  *In re Gaylor*, 123 B.R. 236, 241–43 (Bkrtcy. E.D. Mich. 1991).

*Id.* at 678-79 (footnotes omitted).[27]

Petitioners' counsel has cited no controlling case authority or rule directly supporting the proposition that petitioners are entitled to proceed on the assumption that the *Carroll v. Key Bank* decision must be followed automatically in other bankruptcy appeals heard by other judges in this District.  Indeed, petitioners' counsel is well aware of the fact that this court had previously

---

[27]As the court explains in *In re Arnold*, 471 B.R. 578 (Bankr. C.D. Cal. 2012), "'bankruptcy judges operate in a dual track system where decisions by BAP judges are not binding on district court judges and decisions by district court judges are not binding on BAP judges,'" and "'[a]n additional complexity is that the decision of one district court judge is not binding on his or her colleague.'" *Id.* at 589 (quoting *In re Crain*, 243 B.R. 75, 81 n.6 (Bankr. C.D. Cal. 1999)); *see also* Annotation, *Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions*, 8 A.L.R. Fed. 2d at 171-71 ("As a result of the dual-track appellate system, the stare decisis effect of bankruptcy appeals decisions by district courts and bankruptcy appellate panels has been the subject of considerable disagreement, due to the difficulty in determining where, within the judicial hierarchy, bankruptcy courts and bankruptcy appellate panels stand in relation to the district court." (footnotes omitted)).

reached a differing conclusion concerning the bankruptcy court's "stripping off" of junior liens

and had affirmed Judge Thurman's orders to that effect in a case that is currently pending on

appeal before the United States Court of Appeals for the Tenth Circuit.  *See Woolsey v. Citibank,*

*N.A.*, 438 B.R. 432 (Bank. D. Utah 2010), *aff'd sub nom. In re Woolsey*, Case No. 2:10-CV-1097

(D. Utah Jan. 10, 2011), *appeal pending*, *In re Woolsey*, Case No. 11–4014 (10th Cir. Jan. 20,

2011).[28]

      The court remains ever cognizant of "the basic principle that district courts must follow

the holdings of their court of appeals and the Supreme Court."  *Johnson v. DeSoto County Bd. of*

*Com'rs*, 72 F.3d 1556, 1559 (11th Cir. 1996).  As the Chief Judge of this District recently

reminded us all, the opinion of one judge in the same district "is not properly described as

controlling law" in relation to decisions by other judges in the same district on the same issue.[29]

      As the Tenth Circuit points out,

> the Supreme Court has repeatedly cautioned that the party seeking issuance of the
> writ must "have no other adequate means to attain the relief he desires." *Allied*

---

    [28]In fact, two days after Judge Waddoups entered his memorandum decision in *Carroll v. Key Bank*, petitioners' counsel submitted a copy of that ruling as "a supplemental authority holding that in this District a lien for a wholly unsecured claim in chapter 13 bankruptcy is void under 11 U.S.C. §506(d)" to be considered as part of the *Woolsey* appeal.

    Given the position taken by petitioners' counsel in this case concerning the binding precedential effect of district court decisions on bankruptcy appeals, it proves both ironic and disturbing that petitioners' counsel apparently did *not* call this court's January 10, 2011 ruling in the *Woolsey* case to Judge Waddoups' attention in briefing the *Carroll v. Key Bank* appeal.  Nor for that matter did anyone else, prior to the April 28, 2011 hearing before Judge Waddoups—*no* responsive briefs were filed in *Carroll* by Key Bank or Kevin R. Anderson, the Standing Chapter 13 Trustee.  In contrast, *Woolsey* was decided here after full briefing by the debtors and the Trustee.

    [29](Memorandum Decision and Order Denying All Pending Motions, filed July 23, 2012 (CM/ECF No. 70), in *Richard Dutcher v. Stuart T. Matheson, et al.*, Case No. 2:11-CV-666TS (D. Utah), at 3.)

*Chem.*, 449 U.S. at 35, 101 S.Ct. at 190.  The broad scope of interlocutory appeal
authorized by section 158(a) necessarily decreases the availability of the
extraordinary writ.  Consequently, mandamus is completely unavailable in most
bankruptcy situations."

*Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 386 (10th Cir. 1990).  The

same may be said as to the scope of review of final orders and judgments of the bankruptcy court

under § 158(a), including default judgments entered in adversary proceedings.

Here, the petitioners plainly do have "other adequate means" to obtain the relief under

11U.S.C. § 506(d) to which counsel insists they are entitled, namely the bankruptcy appeal

process.  Nor is the petitioners' right to the writ of mandamus "clear and indisputable," as the

law requires.  Reasonable minds can and do differ on the substantive legal proposition now

pressed upon this court by the petitioners as the footing for the relief they seek.[30]

Petitioners' counsel argues that Judge Thurman may repeatedly abuse his discretion by

"misapplying" the pertinent provisions of the Bankruptcy Code in a fashion different from that

now urged by petitioners—and as applied at least in the instance of the *Carroll* appeal, but not in

the *Wollsey* appeal, in which this court affirmed Judge Thurman's rulings.  As the court of

appeals explained in *Cooper Tire*,

> "When the district court errs in deciding a legal issue, it necessarily abuses
> its discretion.". . .  However, the Supreme Court has cautioned against relying on
> a label such as "abuse of discretion" to justify issuing the writ. . . .  There must be
> more than what we would typically consider to be an abuse of discretion in order
> for the writ to issue. . . .  It is not appropriate to issue a writ "when the most that
> could be claimed is that the district courts have erred in ruling on matters within
> their jurisdiction.". . .

---

[30]As Judge Thurman suggests, "Ultimately, the differing treatment of wholly unsecured
mortgages on debtors' principal residences may need to be resolved by the circuits or possibly the
Supreme Court."  *In re Richins*, 469 B.R. 375, 380 (Bankr. D. Utah 2012).

568 F.3d at 1186-87 (citations omitted).

**CONCLUSION**

We have mandamus jurisdiction under the All Writs Act, 28 U.S.C. § 1651, in aid of our appellate jurisdiction over the bankruptcy court pursuant to 28 U.S.C. § 158(a), but issuance of a writ of mandamus is not warranted or appropriate under these circumstances. Petitioners' situation "fails to surpass the high legal hurdle for issuance of the writ," *Cooper Tire*, 568 F.3d at 1195. The most that may be said at this point is that the bankruptcy court may possibly err in ruling on certain matters within its jurisdiction when it enters the petitioners' requested default judgments. "Even an erroneous ruling in that situation does not justify the issuance of the writ," *id.*, particularly where the bankruptcy court's rulings may become the subject of a direct appeal under 28 U.S.C. § 158(a), as happened in the *Carroll v. Key Bank* case cited by petitioners. In any event, the legal question raised by the petitioners concerning the stripping off of junior liens pursuant to 11 U.S.C. § 506(d) may soon be authoritatively resolved by the court of appeals in the *Woolsey* case, which has already been taken under advisement by its assigned panel of circuit judges.

Therefore,

**IT IS ORDERED** that the Petition for a Writ of Mandamus (CM/ECF No. 1), is DISMISSED.

DATED this 10th day of August, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-21-